IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OWNERS INSURANCE COMPANY,

    Plaintiff,

    v.

HILLSTONE RESTAURANT GROUP, INC., HANNAH LOCKE, and UPTOWN SERVICES, INC.,

    Defendants.

CIVIL ACTION FILE
NO. 1:22-CV-38-TWT

## OPINION AND ORDER

This is a declaratory judgment action. It is before the Court on the Plaintiff Owners Insurance Co.'s ("Owners") Motion for Summary Judgment [Doc. 26] and the Defendant Hillstone Restaurant Group, Inc.'s ("Hillstone") Motion for Summary Judgment [Doc. 29]. For the reasons set forth below, Owners' Motion for Summary Judgment [Doc. 26] is DENIED, and Hillstone's Motion for Summary Judgment [Doc. 29] is DENIED.

### I. Background[1]

This case arises from injuries that Donald Cole, an employee of Uptown Services, Inc. ("Uptown"), allegedly sustained on July 14, 2018 (the "Incident"),

---

[1] The operative facts on the Motions for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

while performing cleaning services at a restaurant owned by Hillstone called Houston's, located at 3539 Northside Parkway ("Houston's Northside"). (Pl.'s Statement of Undisputed Material Facts ¶ 11.) After collecting workers compensation from Owners as Uptown's workers compensation insurance carrier, Cole filed suit against Hillstone and other defendants in Fulton County State Court on March 18, 2020, alleging various negligence claims (the "Underlying Lawsuit"). (*Id.* ¶ 14.) Hillstone thereafter sought a defense and indemnification from Uptown for the injuries sustained by Cole pursuant to a services agreement (the "Cleaning Services Agreement" or the "Agreement"), under which Uptown allegedly agreed to assume liability for injuries to its employees while they performed work for Hillstone. (*Id.* ¶ 16.)[2] After Uptown refused to provide a defense or indemnification, Hillstone filed a third-party complaint against Uptown, alleging breach of contract under the Agreement and seeking an award of attorneys' fees (the "Third-Party Complaint"). (Pl.'s Statement of Undisputed Material Facts ¶ 18.)

Prior to the Incident, Owners issued a commercial general liability policy (the "CGL Policy") and a commercial umbrella policy (the "Umbrella Policy") (collectively, the "Policies") to Uptown that were in force at the time of the Incident. (*Id.* ¶¶ 1–2.) The Policies provided that Owners would pay the

---

[2] Owners and Hillstone dispute whether the Agreement covers all Hillstone restaurants, including Houston's Northside, or only the Houston's restaurant located at 3321 Lenox Road ("Houston's Lenox").

2

sums that Uptown became legally obligated to pay because of bodily injury caused by an "occurrence" (defined as an accident) to which the insurance applied and would defend Uptown against suits seeking those damages. (Doc 26-1, at 35, 50, 95–96.) The Policies also contained exclusions for bodily injury for which Uptown became obligated to pay by way of the assumption of liability in a contract ("Contractual Liability Exclusion"). (*Id.* at 36, 101.) The Contractual Liability Exclusions, however, contained exceptions for "insured contracts" under which the Exclusions were inapplicable ("Insured Contract Exception"). (*Id.*) Both Policies also excluded coverage to Uptown for obligations arising under a workers compensation law ("Workers Compensation Exclusion") and for claims of bodily injury to an Uptown employee during the course of employment ("Employer Liability Exclusion"). (*Id.* at 36, 97, 102.) The Employer Liability Exclusions also both contained an Insured Contract Exception. (*Id.*)

On March 19, 2021, Owners agreed to defend Uptown in the Underlying Lawsuit against the allegations in the Third-Party Complaint, subject to a reservation of rights. (Compl. ¶ 27; Doc. 1-5.) Owners then filed this declaratory judgment action on January 5, 2022, naming Hillstone and Uptown as Defendants and seeking a declaration from this Court that it does not owe a duty to defend or indemnify Uptown in the Underlying Lawsuit. (*See generally* Compl.) Both Owners and Hillstone now move for summary judgment as to Owners' claims for declaratory relief.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.   Discussion

Owners moves for summary judgment as to its claims for declaratory relief, arguing that various provisions of the CGL Policy and the Umbrella Policy preclude imposition of a duty to defend or indemnify Uptown in the Underlying Lawsuit. (Br. in Supp. of Pl's. Mot. for Summ. J., at 12–25.) Hillstone moves for summary judgment as to the Plaintiff's claims for declaratory relief on the ground that the Complaint fails to show any substantial controversy between Owners and Hillstone. (Br. in Supp. of Def. Hillstone's Mot. for Summ. J., at 2–3.) The Court first addresses whether Owners has established a substantial controversy with Hillstone and then

4

addresses Owners' claims for declaratory relief as to its duty to defend and its duty to indemnify Uptown in the Underlying Lawsuit.

### A. Substantial Controversy Between Owners and Hillstone

Hillstone argues that Owners fails to show that it is entitled to a coverage determination against it because the Complaint is "devoid of any allegations requesting a declaration regarding its coverage obligations as to Hillstone" and because Owners "took no effort to substantiate a claim against Hillstone." (Reply Br. in Supp. of Def. Hillstone's Mot. for Summ. J., at 1–3.) But Hillstone's position is rather curious. Hillstone argues that summary judgment should be entered in favor of removing it from this action but then argues in opposition to Owners' motion for summary judgment, claiming that Owners' motion "requires [a] response from Hillstone to protect its interests in the Underlying [Lawsuit]." (Br. in Supp. of Def. Hillstone's Mot. for Summ. J., at 3; Def. Hillstone's Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 2.) The juxtaposition of these arguments points to the conclusion that Hillstone is properly joined as a party to this declaratory judgment action.

As a preliminary matter, Hillstone misunderstands the nature of a declaratory action. Owners is not required to prove its coverage obligations against every party joined as a defendant; rather, "all parties having an interest [in the declaration sought] or adversely affected must be made parties" to the declaratory action. Fed. R. Civ. P. 57 (Advisory Committee's Note to 1937 Amendment). The Eleventh Circuit Court of Appeals has held that tort

claimants are indispensable parties to an insurer's declaratory judgement action against its insured because resolution of the declaratory action may affect the tort claimant's ability to recover damages against the insured. *Am. Safety Cas. Ins. Co. v. Condor Assocs., Ltd.*, 129 F. App'x 540, 542 (11th Cir. 2005). And district courts within the Eleventh Circuit have extended this principle (in the case of tort claimants) to parties who have the right to seek indemnification by the insured. *See, e.g.*, *Selective Ins. Co. of the Se. v. William P. White Racing Stable, Inc.*, No. 15-21333-CIV, 2015 WL 11237014, at *5 (S.D. Fla. Dec. 22, 2015) ("Like a tort claimant, a party who has the right to be indemnified by the insured would also be prejudiced by a judgment declaring that the insurer was not obligated to cover the insured."); *Owners Ins. Co. v. Advanced Sleep Techs., Inc.*, No. CV 121-086, 2022 WL 827251, at *3 (S.D. Ga. Mar. 18, 2022). Accordingly, the Court concludes that Hillstone is properly joined as a party to this declaratory action because it claims a right to indemnification by Uptown in the Underlying Lawsuit.

### B. Owners' Duty to Defend Uptown

The Court turns next to the substantive merit of Owners' claims for declaratory relief. Owners first argues that it has no duty to defend or indemnify Uptown against Hillstone's claims for breach of contract and attorneys' fees in the Underlying Lawsuit because the claims are not covered by the Policies. (Br. in Supp. of Pl's. Mot. for Summ. J., at 12–20.) Owners then argues that the Policies' Workers Compensation Exclusions and Employer

6

Liability Exclusions preclude its duty to defend or indemnify Uptown in the Underlying Lawsuit. (*Id.* at 21–25.) In response, Hillstone opposes Owners' motion for summary judgment, arguing that the Cleaning Services Agreement applies and that the Policies afford coverage to Uptown in the Underlying Lawsuit. (Def. Hillstone's Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 2.)

Under Georgia law, an insurer's duty to defend and its duty to indemnify are separate and independent obligations. *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565 (1997). The Georgia Court of Appeals has provided the following regarding an insurer's duty to defend allegations against its insured:

> An insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured. We look to the allegations of the complaint to determine whether a claim covered by the policy is asserted. If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action. However, . . . where the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit.

*City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga. App. 206, 207 (1998) (citations omitted). "For an insurer to be excused under Georgia law from its duty to defend an action against its insured, the allegations of the complaint must unambiguously exclude coverage under the policy." *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012). The Court proceeds by addressing each of Owners' arguments in turn.

7

### 1. Coverage for Bodily Injuries

Owners first argues that it has no duty to defend Uptown in the Underlying Lawsuit because Hillstone's breach of contract claim does not seek coverage for any "defined injuries" under the Policies. (Br. in Supp. of Pl's. Mot. for Summ. J., at 13.) Hillstone argues, in response, that Owners should defend Uptown because the Policies provide coverage for sums that Uptown is legally obligated to pay due to bodily injury, which encompasses Cole's alleged injuries in the Underlying Lawsuit. (Def. Hillstone's Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 9.) The Court agrees with Hillstone. Any obligation on Owners to defend Uptown unambiguously encompasses "sums that [Uptown] becomes legally obligated to pay as damages because of 'bodily injury' . . . to which [the CGL Policy] applies." (Doc. 26-1, at 35; *see also id.* at 95 (providing the same under the Umbrella Policy).) Accordingly, the Court finds that the Policies do not preclude Owners' coverage of Uptown on that ground.

In support of its position on this argument, Owners relies on *HDI-Gerling*, 701 F.3d 662 (11th Cir. 2012). (Br. in Supp. of Pl's. Mot. for Summ. J., at 13.) The Court finds that the Georgia Court of Appeals decision in *Nationwide Mutual Fire Insurance Co. v. Somers*, 264 Ga. App. 421, 425 (2003), is more analogous to the present case than *HDI-Gerling*. (Def. Hillstone's Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 10.) In *Somers*, the plaintiff sued the defendant-cemetery for desecration of a gravesite and breach of contract for the perpetual care of that gravesite. *Somers*, 264 Ga. App. at

424–25. In the declaratory judgment action filed by the cemetery's insurer, the court concluded that the allegations of desecration arguably brought the plaintiff's claims within the language of the insured's policy covering property damage caused by an occurrence. *Id.* at 425. The court also reasoned that nothing in the complaint asserted that the defendant's desecration of the gravesite was intentional, which supported a finding of the insurer's duty to defend under the CGL policy. *Id.*

Here, like the breach of perpetual care contract at issue in *Somers*, nothing indicates the Incident giving rise to damages arose from intentional conduct (indeed, the Underlying Lawsuit alleges negligence). And although an additional party exists in the chain of liability between Cole, Hillstone, Uptown, and Owners, as opposed to the three parties in *Somers* (the plaintiff, the cemetery, and the cemetery's insurer), the Court nonetheless again concludes that Uptown would unambiguously "become[] legally obligated to pay as damages because of 'bodily injury'" any award in favor of Cole in the Underlying Lawsuit if it has a duty to indemnify Hillstone. (*Id.*; Doc. 26-1, at 35.) Therefore, Owners is not entitled to a declaration of non-liability as to its arguments regarding the Policies' certain defined injuries.

### 2. Occurrences/Accidents

Owners also argues that it has no duty to defend Uptown because Hillstone's breach of contract claim in the Underlying Lawsuit does not arise from an "occurrence" or accident, as contemplated by the Policies. (Br. in Supp.

9

of Pl's. Mot. for Summ. J., at 13.) Specifically, Owners argues that "because Uptown's alleged breach of contract for failing to indemnify Hillstone in connection with the Underlying Lawsuit and failure to name Hillstone as an additional insured were not 'accidents,' . . . there is no 'occurrence' for which coverage is triggered under the CGL Policy or Umbrella Policy." (*Id.* at 14.) In response, Hillstone argues that the facts giving rise to the Underlying Lawsuit indisputably constitute an accident under Georgia law. (Def. Hillstone's Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 12.)

The Court concludes that the Policies do not unambiguously exclude Owners' coverage of Uptown on this ground. The circumstances of Cole's alleged injuries (slipping and falling on a drain while cleaning the kitchen at Houston's Northside) clearly constitute "an event which [took] place without [his] foresight or expectation or design," and thus, the Court cannot deem them to be non-accidental as a matter of law. (*Id.* (quoting *Allstate Prop. & Cas. Ins. Co. v. Roberts*, 696 F. App'x 453, 455 (11th Cir. 2017) (citation omitted)).) Simply put, the Court cannot conclude as a matter of law that Owners is entitled to a declaration of non-coverage under the circumstances because the Policies do not unambiguously exclude coverage in the case. *See Penn-Am.*, 268 Ga. at 565 ("Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured.").

Georgia courts appear to largely preclude coverage for breach of contract claims under CGL policies where the nature of the conduct causing the breach

10

was intentional. *Cf. Georgia Farm Bureau*, 262 Ga. App. at 813. But where allegations of negligent conduct amount to breach of contract, such claims may warrant coverage under CGL policies. *See, e.g.*, *SawHorse, Inc. v. S. Guar. Ins. Co. of Ga.*, 269 Ga. App. 493, 499 (2004). The Court acknowledges that the Georgia Supreme Court declined to answer the question of whether "for an 'occurrence' to exist under a standard CGL policy, Georgia law requires that the claims being defended not be for breach of contract." *Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.*, 293 Ga. 456, 456, 465 n.14 (2013). The Georgia Supreme Court in that case did, however, determine that in certain circumstances a breach of warranty could constitute an occurrence under a CGL policy, albeit addressing the issue in the case of construction contracts. *Id.* at 467. Accordingly, the Court cannot conclude that Owners is entitled to a declaration of non-liability as a matter of law regarding its arguments on occurrences or accidents.

### 3. Contractual Liability Exclusions & Insured Contract Exceptions

Owners next argues that it has no duty to defend Uptown in the Underlying Lawsuit because the Policies contain exclusions for bodily injuries for which Uptown is obligated to pay damages because of the assumption of liability in a contract. (Br. in Supp. of Pl's. Mot. for Summ. J., at 15.) Hillstone argues, in response, that the Insured Contract Exceptions to the Policies' Contractual Liability Exclusions afford coverage to Uptown in the Underlying Lawsuit. (Def. Hillstone's Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 13.)

11

Hillstone does not appear to dispute that the Cleaning Services Agreement falls within the language of the Contractual Liability Exclusions. (*See id.* at 12–16.) Thus, the primary issue here is whether the Agreement constitutes an insured contract, as contemplated by the Policies. Hillstone contends that the Agreement qualifies as an insured contract as either (1) "a contract for a lease of premises," or (2) "any other contract . . . under which [Uptown] assumes the tort liability of another party to pay for 'bodily injury' . . . to a third person." (*Id.* at 13 (quoting Doc. 26-1, at 49); *see also* Doc 26-1, at 92.) The Court finds that the Cleaning Services Agreement is clearly not a contract for a lease of premises, but the second definition merits a closer look.

Hillstone argues that the Cleaning Services Agreement fits squarely within the second definition of insured contract because it was "an agreement pertaining to Uptown's business whereby Uptown assumed the tort liability [of] Hillstone to pay for [the] bodily injury of Mr. Cole." (Def. Hillstone's Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 14.) In reply, Owners puts forth several arguments against a finding of an insured contract.[3] First, Owners

---

[3] Owners also makes two arguments in this part of its brief regarding the applicability of the Contractual Liability Exclusions. (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 7–8 (arguing that the *Great Am.* case and the following language from the Policies preclude Owners' coverage of Uptown: "if the insurance under this policy does not apply to the liability of [Uptown], it also does not apply to such liability assumed by [Uptown] under an 'insured contract'" (quoting Doc. 26-1, at 36, 101)).) Having concluded that the Contractual Liability Exclusions apply and concluding now that the nature of the liability allegedly assumed by Uptown in the Cleaning Services Agreement is analogous to the liability of Uptown in the Policies, the Court finds these

12

contends that Hillstone has failed to show that Uptown assumed any tort liability that would constitute an insured contract because the Agreement covered only the Houston's Lenox location, and not the Houston's Northside location where Cole sustained injuries. (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 7.) Next, Owners argues that the Cleaning Services Agreement cannot constitute an insured contract because its language "suggests that only employees, agents, or contractors of Uptown, not third-parties, are the individuals contemplated by the [Cleaning Services Agreement]" and because Cole was not a third person but rather an employee of Uptown. (*Id.* at 8.) Finally, Owners argues that the "Amendment of Exclusions – Contractors" provision of the Umbrella Policy operates to exclude insured contracts, including the Cleaning Services Agreement, and therefore bars Owners' coverage of Uptown in the Underlying Lawsuit. The Court addresses these three arguments regarding whether the Agreement constitutes an insured contract in turn.

### a. Whether the Agreement Is an Insured Contract Because It Covers All Hillstone Locations, Including Houston's Northside, Or Is Not an Insured Contract Because It Covers Only Houston's Lenox?

Owners first argues that the Agreement is not an insured contract because Uptown did not assume any liability applicable to the Incident under the Cleaning Services Agreement. (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for

---

arguments unpersuasive.

13

Summ. J., at 7.) The Court finds that a genuine issue of fact exists as to whether the Agreement covers all Hillstone restaurants, including Houston's Northside, or just Houston's Lenox. The Agreement provided that Uptown "will indemnify and hold Hillstone harmless from all loss due to injury to [Uptown], [Uptown's] employees, agents, contractors (including subcontractors) while performing work or operations for Hillstone or while on or about the premises of [Houston's Lenox]." (Doc. 26-2, at 2.) Hillstone takes the position in the Underlying Lawsuit that this language of the Agreement afforded coverage to all Houston's restaurants owned by Hillstone, including Houston's Northside where the Incident occurred. (Def. Hillstone's Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 3; Doc. 1-2 ¶ 20.) Owners, however, takes inconsistent positions in interpreting this provision of the Agreement.

Owners first argues, in support of its position that the Contractual Liability Exclusions apply, that such language encompasses the injuries to Cole because he was performing work for Hillstone. (Br. in Supp. of Pl's. Mot. for Summ. J., at 18–19). But Owners also argues, in support of its position against a finding of an insured contract, that the "Agreement, by its very terms, only applies to the Houston's Lenox location." (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 7.) As the saying goes, Owners can't have its cake and eat it, too. The contradiction here points to the conclusion that a genuine dispute of fact exists as to whether the Cleaning Services Agreement covers all Hillstone restaurants, including Houston's Northside, or just Houston's Lenox.

Indeed, the Agreement's language—providing indemnification from loss due to injuries to Uptown's employees while performing work "for Hillstone *or* while on or about the premises of [Houston's Lenox]"—creates an ambiguity for which the parties' intent must be discerned to determine whether the Agreement covers all Hillstone restaurants or just Houston's Lenox. The Court concludes that Owners and Hillstone have not presented facts definitively establishing the intent of Hillstone and Uptown in contracting under the Agreement, such that resolution of the factual issue by this Court would be appropriate. Moreover, this issue appears to be the primary issue being litigated in the Third-Party Complaint of the Underlying Lawsuit in Fulton County State Court. Without enough factual evidence to decide the issue at present, the Court declines to do so.

Having found a genuine dispute of fact exists in determining whether the Cleaning Services Agreement qualifies as an insured contract under the Policies, the question becomes whether such a genuine issue of fact is material to the present case. If the Fulton County State Court determines that the Agreement covered only Houston's Lenox, Owners would be entitled to a declaration of non-coverage to Uptown in the present case because the Incident occurred at Houston's Northside. Absent such a determination at this point, however, the Court proceeds with its analysis assuming that the Agreement *does* apply to Uptown's liability to indemnify Hillstone (and therefore it *may* be an insured contract), and evaluates whether the Policies nonetheless entitle

15

Owners to a declaration of non-coverage to Uptown in the Underlying Lawsuit.

### b. Whether the Agreement Is an Insured Contract Because Cole Qualifies As a Third Person Under the Policies?

Owners next argues that the Cleaning Services Agreement is not an insured contract because Cole was an employee of Uptown and not a "third person" as contemplated by the Policies. (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 8.) Owners' argument regarding the "third person" language in the Agreement has intuitive merit. But the question is whether such language unambiguously excludes coverage under the Policies. *HDI-Gerling*, 701 F.3d at 666. Construing the "third person" language in the light most favorable to Hillstone, the Court cannot conclude that the Cleaning Services Agreement is not an insured contract as a matter of law. That the Policies provide coverage where Uptown "assumes the tort liability of another party to pay for 'bodily injury' . . . to a third person" does not by its terms preclude that third person from being an employee of Uptown. If the language specified that the bodily injury had to be to a non-employee, rather than a third person, such language might be sufficient to find an insured contract as a matter of law. But under the circumstances, the Court concludes that Owners is not entitled to a declaration of non-coverage under the Contractual Liability Exclusions because a question of fact exists as to whether Cole amounts to a "third person" as contemplated by the Insured Contract Exceptions.[4]

---

[4] Because the Policies' Insured Contract Exceptions to the Contractual

### c. Whether the "Amendment of Exclusions" in the Umbrella Policy Precludes Coverage of Insured Contracts in This Case?

Finally, Owners argues that the Umbrella Policy's "Amendment of Exclusions" provision precludes Owners' coverage of Uptown in the Underlying Lawsuit because it excludes from coverage any "[b]odily injury . . . assumed by [Uptown] under an insured contract." (Pl.'s Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 8–9; Doc 26-1, at 112.) The Court finds that it need not resolve the issue of whether the Umbrella Policy's Amendment of Exclusions bars coverage in this case because the Insured Contract Exception to the Contractual Liability Exclusion in the CGL Policy still applies to create a question of fact as to whether Uptown is entitled to a defense from Owners in the Underlying Lawsuit. Therefore, the Court concludes that Owners is not entitled to a declaration of non-liability under the Policies' Contractual Liability Exclusions.

### 4. Workers Compensation Exclusions

Owners then argues that it has no duty to defend Uptown in the Underlying Lawsuit because the Policies exclude coverage for obligations of Uptown under a workers compensation law. (Br. in Supp. of Pl's. Mot. for

---

Liability Exclusions do not bar Owners' coverage of the breach of contract action under the Cleaning Services Agreement against Uptown in the Underlying Lawsuit as a matter of law, Owners' argument regarding the Policies' preclusion of Hillstone's claim for attorneys' fees and litigation expenses against Uptown in the Underlying Lawsuit is unavailing. (Br. in Supp. of Pl's Mot. for Summ. J., at 19.)

Summ. J., at 21.) Specifically, Owners contends that because it already paid Cole's workers compensation claim, the Policies preclude Owners' coverage of Uptown in the Underlying Lawsuit. (*Id.* at 22–23.) In response, Hillstone argues that the Workers Compensation Exclusions have no bearing on the present case because the claim in the Underlying Lawsuit is one of negligence. (Def. Hillstone's Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 18.)

The Court agrees with Hillstone. The cases that Owners cites in support of its argument are distinguishable from the present case. For example, in *Williams v. Lumbermens Mutual Casualty Co.*, 164 Ga. App. 435, 435 (1982), an injured party sought workers compensation from a general contractor after his employer, the subcontractor, failed to pay his workers compensation award. The Georgia Court of Appeals affirmed the trial court's grant of summary judgment to the general contractor's insurer, finding that the governing policy excluded coverage for the plaintiff's claims because they arose from obligations under a workers compensation law. *Id.* at 436. The present case, however, is distinguishable from *Williams* because although Cole received an award of workers compensation from Owners, Cole based his claims in the Underlying Lawsuit on the alleged negligence of Hillstone. Such a theory of relief does not constitute an obligation of Uptown under a workers compensation law. Therefore, Owners is not entitled to a declaration of non-coverage under the Policies' Workers Compensation Exclusions.

### 5. Employer Liability Exclusions & Insured Contract Exceptions

Lastly, Owners argues that it has no duty to defend Uptown in the Underlying Lawsuit because the Policies exclude coverage for bodily injuries to an employee of Uptown arising out of and in the course of employment by Uptown. (Br. in Supp. of Pl's. Mot. for Summ. J., at 23.) Hillstone argues, in response, that the Insured Contract Exceptions to the Employer Liability Exclusions afford coverage to Uptown in the case. (Def. Hillstone's Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 21.) For the same reasons as discussed above pertaining to the Insured Contract Exceptions to the Contractual Liability Exclusions, the Court concludes that Owners is not entitled to a declaration of non-coverage under the Employer Liability Exclusions because questions of fact exist as to whether the Cleaning Services Agreement constitutes an insured contract as contemplated by the Policies.[5] Having found that genuine issues of material fact remain as to Owners' claims for declaratory relief regarding its duty to defend, the Court concludes that Owners is not entitled to summary judgment on any of its claims.

---

[5] Owners' argument that the Endorsement to the CGL Policy bars coverage lacks merit because the new terms of the Endorsement's Employer Liability Exclusion still contain an Insured Contract Exception. (Br. in Supp. of Pl's. Mot. for Summ. J., at 23; Doc. 26-1, at 59.) At most, the Endorsement's language excluding "any obligation to share damages with or repay someone else who must pay damages because of the injury" contradicts the Insured Contract Exception and thus creates an ambiguity that should be construed against Owners. *See Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 328 (1998).

### C. Owners' Duty to Indemnify Uptown

An insurer's duty to indemnify "is not ripe for adjudication until the underlying lawsuit is resolved." *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019). Indeed, the Eleventh Circuit Court of Appeals has "cautioned against the exercise of jurisdiction in suits for declaratory judgment when the question of the apportionment of insurance coverage may never arise due to the lack of a judgment establishing the liability of the insured." *Edwards v. Sharkey*, 747 F.2d 684, 686 (11th Cir. 1984). With no evidence that the issue of Uptown's liability in the Underlying Lawsuit has been resolved, the Court declines to address whether Owners has a duty to indemnify Uptown at this stage in the present litigation.

### IV. Conclusion

For the foregoing reasons, Owners' Motion for Summary Judgment [Doc. 26] is DENIED, and Hillstone's Motion for Summary Judgment [Doc. 29] is DENIED. Hillstone's Request for Hearing [Doc. 36] on Owners' Motion for Summary Judgment is DENIED as moot.

SO ORDERED, this ___28th___ day of October, 2022.

THOMAS W. THRASH, JR.
United States District Judge